**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| JAYNE AVERY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 1:03-cv-1739-SEB-VSS |
| | ) | |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | ) ) | |
| | ) | |
| Defendant. | ) | |

**Entry Discussing Complaint for Judicial Review**

Jayne Avery ("Avery") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq.*

For the reasons explained in this Entry, the Commissioner's decision must be **remanded for further proceedings.**

**I. BACKGROUND**

Avery filed an application for SSI on May 12, 1999. Her application was denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on June 21, 2001. Avery was present, accompanied by her attorney. Medical and other records were introduced into evidence, and Avery and a vocational expert testified at the hearing. The ALJ issued a decision on August 27, 2001, denying benefits. On March 8, 2002, the Appeals Council denied Avery's request for review. On November 19, 2002, the Appeals Council vacated its March 8, 2002, action, to consider additional evidence, but then denied Avery's request for review again. On August 6, 2003, the Appeals Council set aside its November 19, 2002, action, to consider additional information, but then denied Avery's request for review, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision contained the following findings: (1) Avery had not engaged in substantial gainful activity since the alleged onset of disability; (2) Avery had an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations; (3) these medically determinable impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (4) Avery's allegations regarding her limitations were not totally credible for the reasons set forth in the body of the ALJ's decision; (5) prior to November 2000, Avery had the following residual functional capacity ("RFC"): sedentary work with no concentrated exposure to dust, gases, vapors, fumes, or poor ventilation and unskilled work consisting of simple, repetitive tasks not requiring attention for more than two hours at a time; (6) it was anticipated that Avery would again be able to perform work within those parameters before November 2001; (7) from November 2000 to the present, however, Avery had been unable to work; (8) Avery had no past relevant work, was a younger individual between the ages of 18 and 44, and had a high school (or high school equivalent) education; (9) prior to November 2000, Avery had the RFC to perform a significant range of sedentary work; (10) although Avery's exertional limitations did not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 202.27 as a framework for decision-making, there were a significant number of jobs in the national economy that she could have performed, including cashier (2,000 positions in Indiana), assembler (3,000 positions in Indiana), inspector (900 positions in Indiana), machine operator (1,000 positions in Indiana), and information clerk (700 positions in Indiana); and (11) it was anticipated that Avery's condition would improve sufficiently to allow her to perform sedentary work within the parameters found herein by November 2001. With these findings in hand, and through the application of applicable rules, the ALJ concluded that Avery had not been under a "disability" as defined in the Act at any time through the date of the ALJ's decision.

## II.  DISCUSSION

### A.  Applicable Law

To be eligible for SSI, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. § 416.908.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Butera v. Apfel,* 173 F.3d 1049, 1054 (7th Cir. 1999).

> In order to determine whether an individual is entitled to disability insurance benefits, the ALJ must engage in a sequential five-step process which establishes whether or not the claimant is disabled. The claimant must show that: (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997); 20 C.F.R. § 416.920.

*Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.     Analysis

The ALJ found that Avery had severe impairments consisting of coronary artery disease, diabetes, obesity, recurrent hernia, asthma, and major depression. (R. at 30). He provided a thorough and well-reasoned analysis of the record and determined that Avery was unable to work as of November 2000. At the time the ALJ wrote his decision on August 27, 2001, however, he anticipated that Avery's conditions would improve sufficiently as of November 2001 to permit her to perform some unskilled sedentary work. The ALJ determined that such work would have no concentrated exposure to dust, gases, vapors, fumes, or poor ventilation and would consist of simple, repetitive tasks not requiring attention for more than two hours at a time.

Avery argues that the ALJ's conclusion that her conditions would improve sufficiently by November 2001 to allow her to perform sedentary work is not supported by substantial evidence. The court agrees.

Avery underwent multiple hernia repair surgeries and experienced difficulty in healing afterward. (R. at 93-218). The ALJ stated that the "record as of June 2001, however, indicated that the claimant was healing well and I note that in the most recent report dated June 26, 2001, the claimant's doctor stated that the claimant was feeling better, was walking more, and had reduced her weight to 186 pounds." (R. at 32, 118). The ALJ further noted that "[w]hile there was still drainage from her surgical wound, it was

getting better, and the doctor indicated that the claimant should increase her activity." *Id.* It was based on this evidence that the ALJ found "no medical reason why she would not be expected to be able to resume sedentary work before November 2001 (which would be the 12th month required to establish a period of disability)." (R. at 32). The ALJ further stated that "[t]hus, I find that while the claimant had significant problems with a hernia and subsequent repair from November 2000 through June 2001, she has improved and this improvement is expected to continue now that the infection is under control and the wound is healing." *Id.*

The only medical source of record relied upon by the ALJ in finding that Avery's surgical wound would be sufficiently improved by November 2001 is the note of June 26, 2001. As evidence of the difficulty in predicting such healing, the record shows that Avery had surgeries relating to her hernia in November 2000, December 2000, March 2001, April 3, and April 24, 2001. In April 2001, there was a "foul smelling" drainage from the wound. (R. at 123). On May 29, 2001, the progress note indicated that Avery "feels much better, no drainage from wound." (R. at 120). As of June 8, 2001, "green drainage" from the wound was indicated. (R. at 119). On June 26, 2001, the green drainage persisted, although Avery was "feeling better." (R. at 118). There was no indication in the June 26 note or any other medical source of record that Avery's conditions would improve significantly by any particular date, whether that might be October 2001, November 2001, December 2001, or any other date in the future. Avery testified on June 21, 2001, that her wound was healing slowly, it was still an open wound because of her diabetes, and that nurses continued to come to her home twice a day to change the dressing. (R. at 59-62). Absent medical evidence supporting the ALJ's August 2001 prediction that as of November 2001 Avery's impairments would improve to the point that she could perform certain sedentary work, the ALJ impermissibly arrived at his own medical conclusion. *See Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir. 1996) ("[A]s this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). On remand, the ALJ shall develop the record more fully by considering any additional evidence presented by Avery, and by having a medical expert review the entire record and testify at the hearing.

Avery also challenges the ALJ's conclusions relating to her depression. The ALJ acknowledged that Avery was hospitalized in March 2001 with suicidal ideation. (R. at 33). The ALJ noted that while hospitalized, Avery received individual and group psychotherapy and responded positively to that intervention. *Id.* The ALJ further noted that there was "no indication of any further need for psychiatric treatment, and during the hearing the claimant acknowledged that she had not sought treatment since her discharge in March 2001." *Id.* This misstates the record.

By finding that there was no indication of any further need for treatment, the ALJ ignored the psychiatric evidence and Avery's testimony that she was "supposed to go to a partial after I get released from my hernia doctors." (R. at 55). She explained that she could not attend the outpatient counseling classes because the nurses came each day at different times to change the dressing on her wound. (R. at 56). The record supports this

testimony, as the March 15, 2001, psychiatric report indicated that after her inpatient psychiatric hospitalization, "once she is over the hump, we can get her into our Acute Partial Hospitalization Program for continued treatment and then refer her back to Family Psychiatric Center, under Dr. Roegner's tutelage." (R. at 300). On remand, the ALJ shall re-evaluate Avery's depression in the context that continued psychiatric treatment was recommended after March of 2001.

The Commissioner argues that "[s]ubstantial evidence supports the ALJ's conclusion that Plaintiff had failed to prove that by November 2001 she would be unable to perform at least unskilled work involving simple repetitive tasks not requiring attention for more than two hours at a time." (Defendant's Brief, p. 7). This position is not substantially justified because at step five of the analysis, the burden of proof is on the Commissioner, not the plaintiff. *Kasarsky v. Barnhart,* 335 F.3d 539, 543 (7th Cir. 2003). Moreover, the Commissioner's contention that the "record before the ALJ contains no evidence to suggest that her condition did not continue to improve such that she could perform at least a limited range of sedentary work by November 2001," (Defendant's Brief, p. 6), similarly misplaces the burden of proof. The record simply ended in June 2001. The fact that there was no evidence of record post-June 2001 is precisely the problem in determining Avery's eligibility as of November 2001. There was no evidence to support the ALJ's finding that Avery would, in fact, be able to work as of November 2001.

### III. CONCLUSION

For the reasons discussed in this Entry, the ALJ's conclusions at step five of the sequential analysis are not supported by substantial evidence. This court is thus required to remand the case to the ALJ for further consideration consistent with this decision. *Melkonyan v. Sullivan*, 501 U. S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand).

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED**.

Date: 01/13/2006

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana